No. 30,132.

HARRY G. FOSTER, *Appellee*, v. JOHN H. FOSTER, *Appellant*.

(5 P. 2d 1071.)

Opinion filed December 12, 1931.

*S. A. Gard, W. H. Anderson* and *G. M. Lamer,* all of Iola, for the appellant.
*B. Hudson* and *Douglas Hudson,* both of Fort Scott, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action to partition forty acres of land in Bourbon county. The parties are the heirs of Andrew T. Foster, who died in 1918 intestate, with the title of the land of record in his name. The only defendant contesting the partition was John H. Foster, who answered, claiming exclusive ownership of the land by virtue of an oral agreement made with his father in 1881 to the effect that if he should come from Indiana, where he was then living, to Kansas, the father would buy this forty acres of land, and he should improve it and make a home for both of them and keep it as a home for the father, and that the land should belong to the son. At the trial it was admitted, if plaintiff were entitled to prevail, the respective interests of the parties were correctly stated in the petition and the defendant, John H. Foster, assumed the burden of proof. At the close of the evidence the court directed partition, as claimed by plaintiff. The defendant, John H. Foster, has appealed.

The only question before us is whether the evidence was of such character as to require judgment in favor of the appellant. Broadly speaking, the evidence is: Andrew T. Foster formerly lived in Indiana. His first wife died. He was again married and was divorced from his second wife and came to Kansas about 1881. He was then thirty-eight years of age. John H. Foster, a son by

the first marriage, then seventeen years of age, was living with an uncle in Indiana and making his own way. The father, sometime in 1881, wrote to the uncle:

"You get John to come out here and make his home with me, and I will buy this forty acres of land and give it to him, provided he comes and goes on it, and provided he makes a home for me."

This letter was not produced at the trial, but its contents were testified to by John H. Foster. In response to that letter the son came to Kansas. The father, in 1882, did buy the forty acres of land, taking the title in his own name, and he and John moved on the place and batched there until 1887, when John married and brought his wife there, reared his family of three children, and continued to live on the farm until 1901. In the meantime he had broken up the prairie sod, fenced the land, built a house, a barn, a smokehouse, and dug a cellar, and paid the taxes. The father lived there with him as a member of the family. In 1901 John and his family moved to Redfield, a little town three miles from the farm. An old couple moved in on the farm with the father in 1901, and the father lived with them there for two years; but in 1903 he went back to Indiana and made his home with a daughter there until his death, about fifteen years later. During this time appellant sent money to his sister from time to time.

It is conceded that on the trial John H. Foster was required to show clearly, first, that the contract relied on was made; and, second, that he substantially performed it. Does the evidence compel a finding by the trial court in the affirmative on both of these questions?

With respect to the agreement claimed there is no evidence of that except the testimony of the appellant. The letter referred to in his testimony was not produced, and no other witness testified concerning it. Naturally, where one is the claimant for the title to real property standing in the name of another, his own testimony to establish that claim should be scrutinized with care. There is the additional circumstance that the tax receipts were each year in the name of the son, tending to show he paid the taxes, and his wife testified that about or near the time they moved from the farm "he told us the place was to be John's." But, considering the age of the parties, the fact that the father bought the land and took the title in his own name, and that both of them lived on the land

and worked there for many years, we cannot say that the evidence of the contract made by the appellant was so clear and convincing that the court was compelled to find it in the affirmative.

But, passing that point, and considering for the moment that the contract as testified to by appellant was in fact made, does the evidence show that it was fully complied with? Under it the land was to be given to the son, provided, among other things, "he makes a home for me." Touching this phase of the question the appellant testified:

"Q. Why did not the old man make you a deed? A. He offered to make me a deed.

"Q. Why did not you take it? A. I told him I did not need the deed— just let it ride as it is until you are satisfied that I have done my duty as I agreed to do.

"Q. What did you agree to do? A. To look after him and take care of him and make it a loafing place.

"Q. How long? A. As long as he lived."

The evidence further showed that in 1901 the appellant, with his family, moved away from the farm; an old couple moved on the place. Who arranged for them to do so is not clear from the evidence. The father lived with them about two years, and obviously did not like to do so, and went back to Indiana, where he made his home with a daughter for the remaining fifteen years of his life. So for the last seventeen years of the father's life appellant did not make the place a home for him. It is true he did send money to his sister from time to time to be used in defraying the expenses of his father's care, but the amount of that was not disclosed. But without regard to the amount of it, that arrangement fell far short of providing the father a home on the place as long as he lived. Hence, the evidence was not such as to require the court to find that the contract, if made, had been fully complied with.

The result is, the judgment of the court below must be affirmed. It is so ordered.